**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HERBERT P. RUSSELL** | ) | **CASE NO. 1:07 CV 2890** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **TERENCE L. WITHAM** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

## INTRODUCTION

This matter is before the Court upon defendant Terence L. Witham, M.D.'s motion for judgment on the pleadings (Doc. 11).  This case arises out of the medical treatment of plaintiff Herbert P. Russell, who is proceeding *pro se*.  For the reasons that follow, the motion is GRANTED.

## FACTS

The facts set forth herein are taken from plaintiff's Complaint and are accepted as true for the purposes of this Opinion.  Only those facts necessary to the resolution of the instant motion are presented.

1

Plaintiff Herbert Russell initiated this action on September 24, 2007 against Southwest Community Health System ("Southwest") and Terence Witham, M.D. ("Dr. Witham" or "defendant" and, together with Southwest, "defendants") asserting violations of 42 U.S.C. § 1983, plaintiff's First and Fifth Amendment rights and the Ohio Revised Code, as well as various common law causes of action.  Plaintiff has since voluntarily dismissed his claims against Southwest with prejudice.

Plaintiff has a history of manic depression.  On or around August 13, 2006, plaintiff was experiencing a manic episode.  At approximately 2:00 am on August 13, 2006, plaintiff sought medical treatment from the emergency room at Southwest for injuries to his feet sustained while walking for two days during his manic episode.  His feet were treated but his psychosis was not.  He fell asleep at Southwest.  When he awoke, he left the hospital unnoticed by hospital staff and proceeded to walk the streets again.  The medical records indicate he left "against medical advice."

At approximately 8:30 am, plaintiff was detained by two police officers at which time he allowed them to return him to Southwest.  He was admitted to the emergency room for the second time that day at approximately 8:50 am.  During his second hospitalization, plaintiff received no further treatment for the injuries to his feet causing his injuries to worsen. Plaintiff was later transferred to Southwest's mental health unit for observation.

During his time at Southwest, plaintiff was treated by multiple caregivers, including the defendant, Dr. Witham, a psychiatrist at Southwest.  Plaintiff made requests for legal counsel, clothing and cigarettes, all of which were denied.  He asked defendants to secure his rental vehicle, which request was also denied.  Defendants failed to contact plaintiff's family

2

members, refused to accept phone calls from one of plaintiff's siblings, and falsified his medical records to indicate that meetings had taken place with his son when no such meetings took place.  The medical records also included an incomplete history and incorrectly note that plaintiff was homeless, that he was "grandiose", that he tolerated the hospitalization well, that the treatment plaintiff received served to significantly reduce the number and severity of plaintiff's symptoms, and that plaintiff was ready to return to work upon discharge.  Members of Southwest's nursing staff used a racial slur to refer to plaintiff's deceased wife and eavesdropped on his personal phone calls.

Plaintiff's release was to be conditioned upon him being "medically compliant" for three to four days.  Despite the fact that the medical records indicate he was compliant for eight days, plaintiff remained hospitalized until August 28, 2006.  When plaintiff was discharged, he was not provided suitable clothing or means to return to his home in Virginia.  Dr. Witham also caused plaintiff severe distress and anxiety when he remained insensitive to plaintiff's need to return to Washington, D.C. by August 30, 2006 to complete paperwork necessary to effect his retirement.

Plaintiff did not receive any psychotherapy from Dr. Witham.  The medical records indicate that a "history and diagnosis would be inappropriate."  Plaintiff also states he was over-medicated.  His requests to reduce the dosages of the medications he was receiving were denied.  Dr. Witham refused to contact and consult plaintiff's physicians at the Washington, D.C. Veteran's Administration Medical Center (the "VA").  Within one week of his discharge from Southwest, plaintiff obtained medical treatment from his doctor at the VA.  His VA doctor concluded he was over-medicated and immediately reduced the dosages of the

medications he was taking.

The Complaint, filed September 24, 2007, contains ten claims for relief:  (1) unlawful physical restraint; (2) denial of legal counsel; (3) denial of request for clothing and security of automobile; (4) invasion of privacy by eavesdropping on telephone calls; (5) medical malpractice; (6) use of a racial slur directed toward plaintiff's deceased wife; (7) breach of contract for medical services and breach of duty of care; (8) negligence; (9) destruction and falsification of medical records; and (10) intentional infliction of emotional distress.  Dr. Witham moves for judgment on the pleadings.  Plaintiff opposes the motion.

### STANDARD OF REVIEW

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is judged under the same standard of review as a Rule 12(b)(6) motion.  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).  Thus, the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff.  *Ziegler*, 249 F.3d at 511-12; *see also Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).  When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997).  However, the complaint must contain "more than the bare assertion of legal conclusions."  *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Id.* (quoting *Scheid v. Fanny*

4

*Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

**DISCUSSION**

At the outset, the Court notes that it has jurisdiction over this matter by virtue of the diversity of citizenship of the parties. The Court does not have federal question jurisdiction pursuant to 42 U.S.C. § 1983, because plaintiff has not alleged a claim against any state actor. *See e.g., West v. Atkins*, 487 U.S. 42, 49-50 (1988); *see also Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (to prove that a private actor was acting under color of law, plaintiff must show that the challenged conduct is fairly attributable to the state by showing the defendant was engaged in activity traditionally reserved to the state, was acting under compulsion by the state, or that its actions were sufficiently close to and/or controlled by the state).

Plaintiff concedes that the allegations in Count 1 (unlawful physical restraint) are not asserted against Dr. Witham. Therefore, Dr. Witham's motion for judgment on the pleadings is granted as to Count 1.

In Count 2, plaintiff alleges that defendant denied him the right to legal counsel provided by Ohio Rev. Code § 5122.29.[1] Chapter 5122 provides the procedures to be followed when hospitalizing a mentally ill patient either voluntarily or involuntarily. The statute provides that "[a]ll patients hospitalized or committed pursuant to this chapter" have the right to communicate freely with and be visited at reasonable times by counsel. Ohio

---

[1]

Defendant argues that plaintiff points to no authority in support of this claim. However, plaintiff does state in his Complaint that Ohio Rev. Code § 5122.29 provides support for his claims. *See* Complaint at 2.

5

Rev. Code § 5122.29(C).  Defendant argues that Count 2 should be dismissed because it is a "medical claim" subject to a one year statute of limitations.  Ohio Rev. Code § 2305.113(A).

The Ohio Revised Code defines a medical claim as:

> any claim that is asserted in any civil action against a physician ... and that arises out of the medical diagnosis, care, or treatment of any person.  "Medical claim" includes the following:
> (a) Derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person;
> (b) Claims that arise out of the medical diagnosis, care, or treatment of any person and to which either of the following applies:
> (i) The claim results from acts or omissions in providing medical care [or]
> (ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

Ohio Rev. Code § 2305.113(E)(3).  "Medical care" means "the prevention or alleviation of a physical or mental defect or illness."  *Rome v. Flower Mem'l Hosp.*, 635 N.E.2d 1239, 1241 (Ohio 1994).  "Medical diagnosis and treatment" relate to the "identification and alleviation of a physical or mental illness, disease, or defect."  *Id.*  Moreover, a task that is "ancillary to and an inherently necessary part of the administration [of medical care or treatment]" is deemed to arise out of  medical diagnosis, care, or treatment.  *Id.* at 1242.

Defendant provides no authority for the proposition that a violation of the right to contact and confer with counsel pursuant to Chapter 5122 is a medical claim.  However, the Court need not reach this issue, because it appears that Chapter 5122 does not provide a private right of action to enforce the rights granted therein.[2]  The statute does not provide who

---

[2] Defendant does not make this argument.  Nor does defendant assert that he is immune from liability pursuant to Ohio Rev. Code § 5122.34(A).  The Court need not determine whether the statutory

may enforce the rights granted therein, against whom the rights may be enforced or how they

may be enforced.  However, the statute does provide that the Ohio Department of Mental

Health ("DMH") may "adopt such rules as are reasonably necessary to effectuate the

provisions of this chapter."  Ohio Rev. Code § 5122.33.  Accordingly, DMH has adopted such

rules.  The rules are applicable to "inpatient psychiatric service providers licensed by the

department", which include "psychiatric inpatient units administered by a general hospital or

any other facility that provides inpatient psychiatric services."  DMH Rule 5122-14-01.  The

relevant rule provides that

> Each inpatient psychiatric service provider shall have written
> policies and procedures for patient rights to include a grievance
> procedure, which shall provide for and maintain the basic human
> rights of all patients in accordance with Chapter 5122 of the
> Revised Code, including but not limited to sections 5122.27 to
> 5122.31 of the Revised Code, and in accordance with this rule.

DMH Rule 5122-14-11(D).  As this grievance procedure is to address alleged violations of

the rights granted by sections 5122.27 to 5122.31 of the Revised Code, it applies to those

rights plaintiff invokes under section 5122.29.  Thus, the appropriate course of action for

plaintiff to obtain redress is through the grievance procedure.  Accordingly, defendant's

motion for judgment on the pleadings is granted as to Count 2.

In Count 3, plaintiff alleges that defendant denied his request for seasonable clothing

and his request to secure his rental vehicle.  A patient hospitalized pursuant to Chapter 5122

has the right to be provided with an "allotment of neat, clean, and seasonable clothing if

unable to provide his own."  Ohio Rev. Code § 5122.29(F)(2).  However, like the claim for

---

immunity applies to defendant, as the motion is resolved on other
grounds.

access to legal counsel, this claim must be handled by the grievance procedure described above, because it is one of the rights granted "in accordance with Chapter 5122 of the Revised Code, including but not limited to sections 5122.27 to 5122.31 of the Revised Code."  DMH Rule 5122-14-11(D).  Further, plaintiff points to no authority establishing that defendant had a duty to secure plaintiff's vehicle.  Therefore, defendant's motion for judgment on the pleadings is granted as to Count 3.

Count 4 alleges that nursing staff eavesdropped on plaintiff's phone calls.  Plaintiff had a right to make and receive confidential phone calls.  Ohio Rev. Code § 5122.29(D)(2).  However, these allegations are directed to nursing employees of former defendant Southwest.  They are not directed to defendant Witham.  Moreover, violation of this right, like the right to counsel and for clothing, can only be remedied by the grievance procedure described above.  DMH Rule 5122-14-11(D).  Therefore, defendant's motion for judgment on the pleadings is granted as to Count 4.

The allegations of Count 6 for use of a racial slur, like those of Count 4, are directed only toward Southwest's nursing personnel.  As a result, defendant's motion for judgment on the pleadings is granted as to Count 6.

Plaintiff concedes that Count 5 (medical malpractice), Count 7 (breach of contract and duty of care), Count 8 (negligence), and Count 9 (falsification of medical records) are all "medical claims."[3]  These claims are not grounded in the statutory patients' rights described above.  *See* Complaint at 2.  Therefore, the Court must determine whether or not the statute of

---

[3]
       Plaintiff also concedes that the allegations in Claim 9 relating to destruction of medical records (as opposed to falsification) do not apply to defendant Dr. Witham.

8

limitations has expired on these medical claims.

The statute of limitations on medical claims is one year. Ohio Rev. Code § 2305.113(A). The limitations period begins to run when a patient discovers or, in the exercise of reasonable care and diligence, should have discovered his injury. *Id.* at § 2305.113(D); *Allenius v. Thomas*, 538 N.E.2d 93, 95 (Ohio 1989). For this period to be triggered, there must be a "cognizable event" that leads or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient. *Allenius*, 538 N.E.2d at 96. The cognizable event must be such that it places or should place the patient on notice of the need to pursue his possible remedies. *Id.*

Defendant argues that plaintiff was or should have been on notice of his medical claims no later than September 5, 2006 - the date by which his VA doctor had determined he had been over-medicated by Dr. Witham at Southwest.[4] The Complaint was not filed until September 24, 2007 - more than one year after the "cognizable event." Plaintiff argues that his medical condition was such that he should not be charged with knowledge of his injuries until he had sufficiently recovered from his manic episode and resulting over-medication.

Plaintiff alleges in his Complaint that he was "in no condition whatsoever to work" on the day after his discharge, August 29, 2006. However, plaintiff also alleges that he received treatment from his VA doctor "the next week." His VA doctor "immediately" reduced the

---

[4] Plaintiff alleges he was so diagnosed within one week of discharge from Southwest. He was discharged on August 28, 2006. Therefore, defendant calculates that plaintiff was diagnosed as over-medicated by September 5.

9

dosage of his prescriptions and plaintiff has "since managed the bipolar disorder well without any setbacks and [is] able to drive without any adverse side effects."  Nonetheless, plaintiff asserts that he should not be charged with knowledge of his injuries until November 1, 2006 at the earliest.  Plaintiff argues, but does not allege in his Complaint, that he was enrolled in grief counseling to assist in his recovery from his non-lucid period.  That grief counseling did not end until early November 2006.

If a person is of "unsound mind" at the time a cause of action accrues, the limitations period is tolled until the disability is removed.  Ohio Rev. Code § 2305.16.  The definition of "unsound mind" includes all forms of mental retardation or derangement.  Ohio Rev. Code § 1.02(C).  "'[D]erangement' has been equated with insanity."  *Fisher v. Ohio Univ.*, 589 N.E.2d 13, 16 (Ohio 1992).

The Court finds that plaintiff has failed to establish that he was of unsound mind between September 5, 2006 (the time his VA doctor adjusted his medications) and September 24, 2006, such that the statute of limitations was tolled during that time period.[5]  While plaintiff does allege that he was in no condition to hold a job on August 29, 2006, he also alleges that within one week he was attended by his VA doctor.  His VA doctor "immediately" told plaintiff he was over-medicated and adjusted his medications such that plaintiff has "since managed the bipolar disorder well without any setbacks."  In light of this allegation, the Court cannot find that plaintiff was of unsound mind until at least September

---

[5]
      The Court need not determine whether or not plaintiff was of unsound mind prior to September 5, 2006.

24, 2006 such that the medical claims are timely.[6, 7]

In the alternative, plaintiff asserts that he was not on notice of those of his claims that are based upon the medical records until he received those records on or about February 8, 2007.  The only claim based upon the medical records is Count 9 for falsification of the records.  Even if plaintiff was not on notice of the claim for falsification of medical records until February 8, 2007, the Court finds that, upon a detailed review of the allegations, plaintiff

---

[6]

A Rule 12 motion on statute of limitations grounds is an appropriate way to dispose of a claim that, on its face, is time-barred.  5A Wright & Miller § 1308.  The Sixth Circuit has cited Wright and Miller with approval for this proposition.  *Hoover v. Langston Equipment Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992) (affirming grant of motion to dismiss stating a statute of limitations defense may be brought on a motion to dismiss when it is apparent from the face of the complaint that the time limit for bringing the claim has passed).  The Court is limited to the allegations in the complaint because, "the burden is on [plaintiff] to plead circumstances which would indicate why the [cause of action] was not discovered earlier and which would indicate why the statute should be tolled.  Analogous case law indicates these facts must be pleaded affirmatively."  *Auslender v. Energy Management Corp.*, 832 F.2d 354, 356 (6th Cir. 1987) (affirming grant of motion to dismiss on statute of limitations grounds).

[7]

Plaintiff also states that on August 17, 2007, he mailed a letter to the interim CEO of Southwest indicating that if they could not informally resolve his complaint, he intended to file a lawsuit within 30 days.  Plaintiff asserts that this letter satisfies the requirements of Ohio Rev. Code § 2305.113(B)(1), which provides that when a plaintiff who allegedly possesses a medical claim gives written notice of his claim, the plaintiff may commence his case within 180 days of giving such notice regardless of whether the one year statute of limitations runs after the letter was sent.  However, plaintiff did not direct his letter to Dr. Witham.  Thus, plaintiff cannot claim the protection of the statute, because he did not give notice to "the person who is the subject of that claim."   Ohio Rev. Code § 2305.113(B)(1).

fails to state a claim upon which relief may be granted.  None of the facts that plaintiff alleges in support of Count 9 are such that would permit recovery in law or equity.

For the reasons stated above, the Court grants defendant's motion for judgment on the pleadings as to Counts 5, 7, 8, and 9.

Defendant also argues that Count 10 (intentional infliction of emotional distress, or "IIED") is a medical claim.  The statute of limitations for an IIED claim is generally four years.  *Stafford v. Clever Investigations, Inc.*, 2007 Ohio 5086, *P8 (2007).  However, when the acts underlying the claim would support another tort, the statute of limitations for that other tort governs the claim for intentional infliction of emotional distress.  *Id.* (holding that the shorter limitations period for assault and battery should apply) (citing *Doe v. First United Methodist Church*, 629 N.E.2d 402 (Ohio 1994) (assault and battery limitations period applies to claim sounding in negligence)).  In order to determine the applicable statute of limitations for a particular claim, courts must look to the actual nature or subject matter of the acts giving rise to the complaint, rather than the form in which the action is pleaded.  *Id.*  A party cannot transform one cause of action into another through clever pleading or an alternate theory of law in order to avail itself of a more satisfactory statute of limitations.  *Id.*

In the alternative, defendant argues that even if all of the allegations in plaintiff's Complaint are taken to be true, plaintiff cannot sustain a claim for IIED.  To prove IIED, plaintiff must demonstrate "(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress."  *Phung v. Waste Management*, 644 N.E.2d 286, 289 (Ohio 1994).  A plaintiff may establish

such a tort only if "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (Ohio 1983); *see also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999).  The Court finds that the conduct alleged is not "so extreme in degree, as to go beyond all possible bounds of decency."  Accordingly, defendant's motion for judgment on the pleadings is granted as to Count 10.

**CONCLUSION**

For the foregoing reasons, defendant's motion for judgment on the pleadings is GRANTED.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/20/07